**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**ROBERT DILENSCHNEIDER, JAN DILENSCHNEIDER, individually and on behalf of the Conjugal Partnership constituted between them;**

***Plaintiffs,***

**v.**

**BRAEMAR HOTELS AND RESORTS, INC., MARRIOT INTERNATIONAL, INC., DBC COMPANY AND CBD COMPANY, as owners and/or operators of DORADO BEACH, A RITZ CARLTON RESERVE, AMERICAN INTERNATIONAL INSURANCE COMPANY, ABC INSURANCE COMPANY, XYZ INSURANCE COMPANY;**

***Defendants***

Civil No.: 3:25-cv-01484

PERSONAL INJURY/DIVERSITY

## COMPLAINT

**TO THE HONORABLE COURT:**

Now appear Plaintiffs, Robert Dilenschneider, Jan Dilenschenider, individually and on behalf of the Conjugal Partnership constituted between them, through their undersigned attorney, and very respectfully state, allege and pray as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter based on complete diversity of citizenship under 28 U.S.C. § 1332. Plaintiffs are citizens of the State of Connecticut and Defendants are all citizens of and have their principal place of business a State other than Connecticut. This is a civil action, and the amount in controversy exceeds $75,000.000, exclusive of interest and costs.

2. Venue is proper under 28 U.S.C. § 1402(b) in that all, or a substantial part, of the acts and omissions forming the basis of these claims occurred in the District of Puerto Rico.

**PARTIES**

3. Plaintiffs Robert Dilenschneider and Jan Dilenschneider are of legal age, married to each other in a conjugal partnership, and are residents and citizens of the State of Connecticut.

4. Defendant Braemar Hotels and Resorts, Inc. is a corporation organized and existing under the laws of the state of Maryland or a state other than Connecticut, which has its principal place of business in a state or states other than the state of Connecticut.

5. Defendant Marriot International, Inc. is a corporation organized and existing under the laws of the state of Maryland or a state other than Connecticut, which has its principal place of business in a state or states other than the state of Connecticut.

6. Defendant American International Insurance Company is a corporation or other legal entity which is a citizen of and has its principal place of business in a State other than the state of Connecticut.

7. Defendants DBC Company and CBD Company are corporations or other legal entities that administer, operate and/or own Dorado Beach, a Ritz-Carlton Reserve, whose names are unknown at this time, which are citizens of and have their principal place of business in a State other than the state of Connecticut.

8. Defendants ABC Insurance Company and XYZ Insurance Company are corporations or other legal entities whose names are unknown at this time, that are

insurance carriers of defendants, which are citizens of and have their principal place of business in a State other than the state of Connecticut.

**FACTS**

9. On January 23, 2025, plaintiffs Robert Dilenschneider and his wife Jan Dilenschneider (hereinafter "Mr. and Mrs. Dilenschneider" or "the Dilenschneiders") arrived and checked in as guests at the properties known as Dorado Beach, a Ritz-Carlton Reserve.

10. Mr. Dilenschneider, age 81, has a history of neuromuscular weakness, but prior to the incident subject of this case was generally mobile and able to ambulate with the assistance of a walker. His condition was readily apparent to the staff of Dorado Beach, a Ritz-Carlton Reserve.

11. On January 27, 2025, the Dilenchneiders were offered and accepted a tour of the properties on a motorized golf cart driven by an employee, servant or agent of Dorado Beach, a Ritz-Carlton Reserve. Mr. Dilenschneider sat in the passenger seat and his wife sat in the back seat. The golf cart was not equipped with seat belts.

12. During the course of the tour, the driver of the golf cart was traveling at an excessive speed and negligently made an abrupt and unexpected turn, without warning his passengers, resulting in Mr. Dilenschneider being thrown from the golf cart onto the pavement.

13. Mr. Dilenschneider struck the pavement violently with his head, torso, elbows and knees, suffering lacerations, contusions and other serious injuries. In severe pain,

he was taken back to the property he and his wife were staying at, where he remained bedridden.

14. Mr. Dilenschneider subsequently received assistance and care while at the property on a daily basis. On January 28th and 30th, 2025, a physician, Dr. Kumar, was sent by the hotel to examine and treat Mr. Dilenschneider's wounds. Mr. Dilenschneider continued to experience significant pain and discomfort.

15. On February 2, 2025, Mr. and Mrs. Dilenschneider returned to their home in Darien, Connecticut.

16. Upon his return to Connecticut, Mr. Dilenschneider received treatment for bilateral skin tears on his knees at an outpatient wound care clinic. During the month of February and early March he received regular treatment and saw improvement; however, on March 10, 2025, he began to feel increasingly fatigued with malaise outside of his regular constitution, and he developed fevers with rigors and was subsequently transported to the hospital. He was hospitalized from March 11th to 13th, 2025, and treated with intravenous antibiotics for what was diagnosed as a Methicillin Susceptible Staphylococcus Aureus ("MSSA") infection. On discharge he was switched to oral antibiotics.

17. At home Mr. Dilenschneider showed a persistent skin rash (lower extremity erythema) despite antibiotic therapy. Also, he was unable to get out of bed even with the assistance of an aide and his wife. He was sent to the Emergency Department for further evaluation and treatment. He was diagnosed with diffuse subcutaneous edema and mild hyperemia in the calf. He was treated with

medication and ointment and discharged on March 15, 2025, with instructions to continue treatment at home.

18. As a result of the incident subject of this case, since his return to Connecticut, Mr. Dilenschneider has required increased assistance while at home for all daily activities, including dressing, bathing, and any other activity requiring mobility. Accordingly, he has had to hire Affirmed Home Care, who have provided assistance on a daily basis, at a cost which currently exceeds the sum of $40,000.

19. As a result of the incident subject of this case, since his return to Connecticut, Mr. Dilenschneider has had to receive physical therapy at least twice daily from RVNA Visiting Nurse Services and/or Performance Optimal Health, at a cost which currently exceeds the amount of $20,000.

20. As a result of the incident subject of this case, since his return to Connecticut, Mr. Dilenschneider has been unable to use his own vehicle, and has therefore had to hire the services of R&S Transportation to transport him to and from appointments, at a cost which currently exceeds the amount of $10,000.

21. As a result of the incident subject of this case, since his return to Connecticut, Mr. Dilenschneider has been unable to fully perform his duties as Chief Executive of the Dilenschneider Group, or fully engage in other business endeavors.

22. As a result of the incident subject of this case, since Mrs. Dilenschneider suffered and continues to suffer mental anguish and other emotional damages at having to witness the injuries and physical decline of her husband, as well as his frustration with his injuries, and having to assist him to a greater extent than usual with his activities of daily living.

**LIABILITY**

23. Under Article 1536 of the Civil Code of Puerto Rico, the defendants Braemar Hotels and Resorts, Inc., Marriot International, Inc., DBC Company and CBD Company, had at all times the duty to exercise reasonable care in the operation of the Dorado Beach, a Ritz-Carlton Reserve, such as might be exercised by a good family father. As owners and operators of a hotel, these defendants were required to exercise a particularly heightened degree of care towards their guests, which included a duty not to expose them to any risky or dangerous situations, and a duty to exercise due care in transporting them throughout the premises.

24. As of January 27, 2025, Mr. Dilenschneider was a heavy-set octogenarian with obvious mobility difficulties which were readily apparent to the staff of Dorado Beach, a Ritz-Carlton Reserve. It was therefore reasonably foreseeable that he should not be exposed to any situations which might endanger his somewhat fragile health or pose an unreasonable risk of injury. Specifically, it was reasonably foreseeable that, while riding as a passenger in a golf cart unequipped with seat belts, Mr. Dilenschneider might be thrown from the vehicle if the driver made any abrupt turns at speed and without warning.

25. Defendants requested, allowed, permitted, and encouraged the Plaintiffs to enter onto the premises. Consequently, the Plaintiffs were invitees to whom defendants owed a heightened duty to protect and guard from harms such as the negligent operation of a golf cart by their employees, servants and/or agents, which was a dangerous condition and hazard existing on the premises that posed an

unreasonable risk of harm, and which defendants - including their agents, servants, and employees - knew or reasonably should have known existed.

26. Plaintiffs would show that nothing they did or failed to do caused, or in any way contributed to the incident that injured them. Defendants failed to perform their duties and were therefore negligent in: (a) transporting the plaintiffs in a golf cart that was not equipped with seat belts or other safety features; (b) allowing plaintiffs to be transported in a golf cart by an employee, servant or agent who was inadequately trained and/or supervised; (c) negligently operating a golf cart at excessive speed, making abrupt turns without warning and without due regard for the safety of the passengers; (d) failing to warn the plaintiffs of the danger posed by the above.

27. Each and all of the above and foregoing acts on the part of the defendants, both of omission and commission, were negligent and constituted negligence, and were each and all a proximate cause of the occurrence of the incident in question and therefore of the injuries and damages suffered by Plaintiffs.

28. Plaintiffs would further show that defendants were grossly negligent. Specifically, plaintiffs would show that the negligent acts, omissions of defendants constitute acts or omissions: (a) that, when viewed objectively from the standpoint of defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiffs and/or others; and (b) of which defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs.

29. Such gross negligence was a proximate cause of the incident that is the basis of this lawsuit and the injuries and damages sustained by plaintiffs.

30. As the insurers which issued one or more liability insurance policies covering the damages alleged in the present Complaint, defendants American International Insurance Company, ABC Insurance Company and/or XYX Insurance Company are directly liable to plaintiff under Puerto Rico's Direct Action Statute, Title 26 P.R. Laws Annotated, Section 2003.

31. All damages suffered by plaintiffs are the direct, proximate and foreseeable consequence of the actions, omissions, negligence and breach of duty of the defendants Braemar Hotels and Resorts, Inc. and Marriot International, Inc., DBC Company and CBD Company, and/or their employees, servants and/or agents.

**DAMAGES**

32. Mr. Dilenschneider suffered extreme pain and discomfort immediately as a result of the fall, which continued for weeks and was aggravated when his wounds caused or contributed to his developing an MMSA infection.

33. Mrs. Dilenschneider suffered mental anguish and discomfort immediately as a result of the fall, which continued for weeks and was aggravated when her husband's wounds caused or contributed to his developing an MMSA infection.

34. Prior to his fall, Mr. Dilenschneider was independent with sit-to-stand transfers, could ambulate distances up to 125 feet using a rollator, and was able to stand unassisted for dressing and vehicle transfers. He maintained a level of autonomy which allowed him to safely manage these tasks without support, and was able to

go about his daily activities, including running his company, the Dilenschneider Group.

35. As a result of the fall and subsequent infections, there has been a rapid and significant deterioration in Mr. Dilenschneider's physical capabilities. He is now unable to stand without the physical assistance of a trained professional, cannot safely transfer into or out of his vehicle, and requires ongoing skilled therapy services. Daily rehabilitation and therapeutic interventions are essential to address his current impairments and work towards the restoration of his previous level of function; however, given his age, there is no guarantee that he will ever regain it. This change has significantly affected Mr. Dilenschneider's independence, safety and quality of life.

36. As a result of the incident subject of this case, Mr. and Mrs. Dilenschneider have both suffered emotional damages at having to deal with Mr. Dilenschneider's injuries and physical decline.

37. The Plaintiffs' physical and emotional damages are ongoing in nature and are expected to continue into the future.

38. As a result of the negligence of the defendant, the Plaintiffs have incurred out-of-pocket expenses in the following estimated amounts: $40,000 for Affirmed Home Care, who have provided assistance on a daily basis; $20,000 for physical therapy at least twice daily from RVNA Visiting Nurse Services and Performance Optimal Health; and $10,000 for transportation expenses from R&S Transportation. The Plaintiffs expect to incur additional out-of-pocket expenses for these and other services in the future as well.

39. Plaintiffs' damages are valued well in excess of $75,000, exclusive of costs and interest.

40. Under Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues so triable.

41. To the extent the defendants deny liability for the damages claimed herein, they act with obstinacy and temerity and are therefore liable for prejudgment interest, costs and attorneys' fees.

## PRAYER

**WHEREFORE,** plaintiffs respectfully requests that the Honorable Court grant the present Complaint and award damages, exclusive of prejudgment interest from the date of this filing, costs, and reasonable attorneys' fees, in an amount to be determined at trial, but no less than ONE MILLION DOLLARS.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 11th day of September, 2025.

S/Manuel San Juan
MANUEL SAN JUAN
LAW OFFICES OF MANUEL SAN JUAN, PSC
USDC-PR No.: 204706
P.O. Box 9023587
San Juan, Puerto Rico 00902-3587
Tel.: (787) 723-6637 / (787) 723-6669
Fax: (787) 725-2932
Email: sanjuanm@microjuris.com

S/ Eduardo J. Cobián Roig
Eduardo J. Cobián Roig
USDC-PR 226306
COBIAN ROIG LAW OFFICES
P.O. Box 9478
San Juan, Puerto Rico 00908-9478
Tel.: (787) 247-9448
Fax.: (787) 725-1542
eduardo@cobianroig.com

**ATTORNEYS FOR PLAINTIFFS**